Case number 221707, Wholesome de Puerto Rico, Inc. v. ITW Food Equipment Group, LLC. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning to all. Good morning, counsel, ladies and gentlemen. My name is Carlos Rodriguez, and with Gabriel Quintero and Goldman and Fidenti and Cordova, we represent the appellant, in this case, ITW Food Equipment, which does business as here in this food equipment group. We request please to reserve two minutes for rebuttal, if possible. Amen. Thank you. We request that the court of appeals reverse the district court's final order on attorney's fees for the leases that are set forth in our brief. Today, I will address one main point, that of the contractual attorney's fees count in support of our position and address any questions that your What is the status of the claim in the district court against Compass? It was a judge. The jury trial gave a judgment on the claims of Wholesome against Compass and granted a counterclaim from Compass to Wholesome. I don't know if those... We've got a final judgment, though, that resolves everything in the district court. Except for attorney's fees and costs. Yes, sir. Thank you. And we will rely on our briefs for the other arguments that I will be emphasizing today, but we believe that the judgment should be reversed because the district court should have enforced an attorney fees shifting provision that was contained in terms and conditions of contract that were located in a website accessible by a hyperlink from the confidential proposal that became the contract between the parties. Peerless further contends... Can I ask one question? Yes, sir. Is there an argument that... Was there an argument below, and I could just be misremembering, was there an argument below that the contract, even if it did have a fee shifting provision, was against public policy? No, sir. No, that argument was not made below? No, there was no challenge. The only was the charge that it was a contract of adhesion. Contracts of adhesion under Puerto Rico Law are enforceable, but the sole argument that was made by Folsom in the district court was that it was a contract of adhesion and therefore unenforceable. No other issues regarding incorporation by reference of the fee shifting provision were made below. It only came up in the district court's opinion and order, and that's where that argument was developed, and that's why we were now forced to develop that argument, because what we were relying upon was that there was an agreement, that there was no question and no controversy about the agreement itself, and Folsom actually admitted in its opposition papers in the district court that there was part of the agreement, that it was part of the agreement. So in that sense, that came up only after the opinion was issued. Folsom always acknowledged that the terms and conditions other than the warranty, for example, were in agreement with Beers. Folsom did not question in the district court that it was sufficiently notified about the binding nature of the fee shifting provision. So just to nail down this point, if you were to agree with your interpretation of the contract such that the fee shifting provision was included in it as a binding term, then it's game over from your perspective. There's nothing left for the district court to do. There's no other arguments against your position at that point. Is that right? The only issue that may be remaining would be to determine the reasonable sum that would be owed to Peerless, because that issue was not even touched. I mean, the attorney's fees that were requested by Peerless in this case weren't challenged by Folsom, except to point out that there was one single motion that Peerless lost in the district court level. But any specific attack on the request for attorney's fees was not made in the district court, and the court did not address that. So I have to concede that the fee shifting provision does relate to a reasonable sum of attorney's fees, and that has not been yet developed in the district court. Can I just get one clarification? Because the factual scenario refers to the length in the agreement. So was the agreement itself transmitted via electronic means? It was sent electronically between the parties. Okay, and so the whole thing was electronic, and the final agreement, was it executed online via, you know, facsimile signatures? Was it reduced to writing? It was actually reduced to writing. It was signed in writing. You would see the signatures under the statement addressing the terms and conditions in the agreement. It was transmitted between them electronically, but there was a physical piece of paper that was actually signed by both parties. So there was an opportunity once it was transmitted electronically for each side to review anything that was considered a link incorporated into the contract? That is correct, Your Honor, and in fact, these are two entities that had conducted business with each other previously and were familiar with their business practices. And done business via electronic. From a certain date on? It's not in the record. I can't pinpoint the date from which beyond it, but it certainly were a lot of information on the record in the appendices where they communicate to each other by email, for example, and in group attachments by email. What about the invoices? I mean, I know the invoices were deemed to be after the fact, but what about the invoices? Were those communicated electronically at all? They were, too, and then the language in the invoices is even more compelling, because although the court in this court, in Olawa v. Coverall, does not rule that there must be some sort of magic terms to actually incorporate by reference something in a hyperlink, the language in the invoices was even clearer than the confidential proposal, as in the acceptance of the terms. Right. Would you agree that the language of the invoices that came well after the contract was formed? I pause because the first one, the first invoice is for the down payment, and there was no beginning of manufacturing of machinery until that down payment was paid. And the first invoice, which I can tell you in the joint appendix where I think it's 544, but I can point it out for you, that first invoice was for the down payment, and that was the beginning of the actual notice of order to proceed with the manufacturing of the machinery. Right, but I thought the agreement was that the order, I understand why you might not want to start manufacturing when you've got money, but the contract was formed with the paper that Judge Thompson was talking about back in January 2017. Oh, February of 2017. Yes. I think I understand your point about the party presentation. If we get past that, and we look at the district judge's analysis here, what's wrong with his point that in the order, the tucking of this sentence under the warranty provision doesn't really give your parent notice that something as substantive as a bottom down or as a fee-shifting provision is going to be part of the contract? Well, there are several factors that address that. The hyperlink that led directly to the address of the page where the terms and conditions and warranty were located. It wasn't just the warranty. There may be a heading in the contract that refers to warranty, but the actual hyperlink, and you can see by the terms used for the hyperlink itself related to terms, conditions, and warranty, and it was located right above the signature blocks that were in fact preceded by a language that stated quotation accepted and order confirmed. So the combination of the indication of the hyperlink, the statement that quotation accepted and order confirmed together with the signature block underneath it, that is sufficient indication that it was part of the agreement, and it wasn't placed in question by Holson. What Holson said was that it was expansive and asymmetrical once you went into those terms and conditions. It's not that they didn't have notice of those terms. It's not that those terms weren't part of the agreement. It's that they considered it under the theory of contractual adhesion to be expansive and asymmetrical. Can I just, on the invoices, and I, there may be understandable reasons why this is so, if it is so, but did you make the invoices argument law? No, no, because this issue didn't come up. No, it's only when we received the opinion of the court that we realized that the court had embarked on this analysis on its own, because it hadn't been raised by Holson either. Holson, the only term that addressed the terms of the shifting provision was to attempt to say that because it was expansively asymmetrical, it was a contract of adhesion, it shouldn't be enforced. I understand, but you were moving, when you moved in support of the claim to have the contract read to include the terms, you relied solely in doing so on things independent of the invoices. On the contract itself. Right. So now, to the extent that you'd like us to rule for you on the basis of the invoices, that is something that was not presented to the district court. That is correct. Even though you had opportunity to do it when you first, because when you first moved, there was nothing to stop you from augmenting your argument with the invoices rather than relying solely on the contract. True. That is true, Your Honor, and we don't think that it was necessary. Yeah. That's why we did it. I just, it may affect our standard of review if we got to the invoice question, how we then look at the invoice. Perhaps, perhaps. With regard to the doctrine or principle of party representation, there is a case in the United States Supreme Court that says departing or deviating from party representation may in and of itself be an abuse of discretion. Good. I mean, just to be clear, when you moved for attorney's duties, you moved citing the contract itself, the terms of the contract. Yes. And that's what you relied upon. Yes, and the only, and applied using the precise language of the feasibility provision of the terms. And when they objected, they didn't object and raise any invoice issue. They didn't raise any issue other than it's a contract of adhesion. That section is expansive and asymmetrical and shouldn't be enforced. And that's all they said. And when the district court then issued its ruling, did you move for reconsideration or anything at that point? I did not, and I can explain why. The Puerto Rico Rules of Procedure do have a specific rule for motions for reconsideration. The Federal Rules of Procedure do not. There's a practice, there has been a practice. I'm sorry, I'm aging myself. In 42 years, in my first 22 years of practice, a lot of Puerto Rico attorneys would file motions for reconsideration in the federal court, even though there wasn't a rule that allowed it. But in the last 20 years or so, many of our district judges have been issuing orders saying, unless it complies with Rule 59e, we don't want to see motions for reconsideration. And Rule 59e relates to motions to alter or amend judgment. So I have been much more cautious about filing motions for reconsideration than matters that are not really related to the judgment. So that's the thinking, if it helps your honor. So effectively, is there just a blatant error by the district court in a ruling here to not, if the instruction is not to inform the district court of it, just go take the appeal? With regard to a judgment, we would raise it. With regard to an issue that is more collateral, we may not. It depends on the case. In this case, we didn't think that it would, would be a useful matter after the court took it upon its own to make this analysis that hadn't even been raised by the parties. Well, wouldn't it have been a way to find out why the district court thought it was appropriate to do it? With the benefit of hindsight, perhaps. Which is part of the arguments of my opponents. Is there a lot of discussion, though, amongst the bar, based upon what you just shared with us, as to whether you should or should not do something like that in the court's hearings? Well, we can see it in the judge's orders when they continuously file these orders, saying because this motion doesn't comply with Rule 59e, that it's hereby denied. And it happened in this case when Judge O'Bee was the district court judge presiding over the case. It did happen with one particular motion, and it's part of our reply group. And it's something that's very customary, not just Judge O'Bee, but some of the other district judges have been telling us that. It's a way of telling us, don't be filing motions for reconsideration every time we rule against you. With that, I can see why you would want that to be the direction you would do that. And I guess the question is, though, when you're saying something as fundamental as you just want to point out you just decided something that nobody argued, that would seem like the kind of thing that would be worthwhile to raise to the district court before you go to the court of appeals. It's a double-edged sword, Your Honor, in the sense that we had a visiting judge that may not have been accustomed to the practice and more tolerant of the practice of the reconsideration, and if I've seen this, it's because I was trying to be cautious, maybe. Thank you. Thank you, counsel. At this time, counsel for the appellee would please introduce himself on the record to begin. May it please the court. My name is Rafael Cox-Salomar, and I represent Appellee Olson de Puerto Rico. Your Honors, mindful of this court's very heavy workload, I will start by pointing out that this is an unnecessary appeal from an extensively well-researched and well-reasoned decision below, denied appellant's post-verdict motion for attorney's fees. This court has been clear that the trial court's discretion in respect to visa wars is extremely broad, but surprisingly, the U.S. Supreme Court has explicitly cautioned against, and I quote, "...appellant micromanagement of fee awards in the words of Justice Kagan." That might be true if you're talking about the amount, but here we're just talking about whether there was an agreement to, in this matter, if there's a contract that you are supposed to pay the fees. That's not micromanaging. Either there is a contract, or is there? Your Honor, if I may address your query, the decision made by the court below, basically finding that there had been no incorporation by reference to the fee-shifting provision found on Peerless's website, was very well-reasoned, unlike what... And do we review that question at all? That question, no, unless there was a material error of fact, which there was no material error of fact here. Opposing counsel suggests that my client did not raise this incorporation issue at all, and that's simply not true. And I invite the Honorable Court to revisit the cert reply, Holsum 5, on this case, and specifically in Holsum's cert reply on page 3, at the end, and on footnote 5, Holsum is raising the issue that there was no incorporation by reference because this provision wasn't explicitly or clearly... There was no clear indication that Holsum was going to be bound by this. Now, the Holsum... I'm looking at your footnote 5. I don't see that. It says, first of all, Your Honor, the last sentence, page 3, where we say in the instance, in the instant case, the so-called fee-shifting clause was not visible or incorporated to the principal text of the agreement. And then on footnote 5, what we're saying, Your Honor, is that all throughout this process, we tried to access this hyperlink, and it was never found. If you go to the hyperlink now, you'll see that it says page not found. And the other thing, which is just mind-boggling, but opposing counsel basically... Did the court make that finding a fact? That you couldn't actually access it? No, Your Honor. We raised this, Your Honor, on footnote 5 of our survey guide, and I would like to bring to your attention... I'm sorry. You seem to have just shifted. We were trying to figure out whether the argument that they're claiming was not raised below, which was an incorporation argument, was raised. Now you're saying footnote 5 says it because footnote 5 says you couldn't access the hyperlink. Yes. That's not the same argument as to whether if you could access it, it would have been incorporated. You're right, sir. So where do you make the argument that it was not incorporated? We make the argument here on page 3 of the survey guide, when we say the fee-shifting clause, and I quote, sir, was not visible or incorporated to the principal text. I admit... What's in the reply brief? The reply brief was fined by a peer this month. What was in your initial brief? In my initial brief, yes, in our initial brief, we raised the argument of contract of admission. Yes. We raised the argument of public policy, which Chief Judge Barron suggested earlier. We raised those issues, but that didn't mean that the other issue we raised in the survey guide was not there. In other words... But just to be clear, you didn't raise that it wasn't sufficiently incorporated by reference into the contract itself in your reply brief. In our opposition... In your opposition brief. In our opposition, we did not raise it as such. We did raise it, however, in our survey guide. So the basic structure of it is, you say contract of adhesion in your opposition. They replied saying it's not a contract of adhesion. You then did a surreply in which you added in the idea that it was not incorporated. That's your... That is right. And then the district court said, okay, I'll take the incorporation argument and ran with it. If I may add the final insert, Your Honor, in so doing, the district court did not abuse its discretion and the district court did not violate the court presentation principle. And I want to point out that the Supreme Court case your opposing counsel is raising is inapposite in the present case. I mean, he's citing Green law, he's citing Burke, he's citing a series of cases that have absolutely nothing to do with this case. Cases in which in the words of Justice Scalia, you know, there was a massive, a drastic departure from the case as presented by the parties, but that's not the case here. I mean, Hulson raised this in his surreply. You know, the other thing that opposing counsel misses completely is that he... You're not saying that if you had gone to the link itself that the link wasn't... the language of the link wasn't clear. You're not arguing that. No, I'm saying that the link never... I mean, there was no... You're saying that the contract itself didn't sufficiently incorporate the link. But if we find that it did, you're also not saying that the language in the link wasn't sufficiently clear. Your Honor, if I may, I'm saying two things. I'm saying that the link led nowhere in the first place, so, you know, there could be no incorporation if the link led nowhere. And we're also saying that there was no incorporation by reference. Now, did this report engage in an exploration... Your Honor, you're not answering my question. I'm just trying to... Oh, I'm so sorry, Your Honor. Let me go back. You're not saying that if you had gotten to the link the language in the link itself... No, I'm not saying that. ...was sufficiently clear. No, I'm not saying that. So you're only saying that there wasn't sufficient language in the contract... That's right, Your Honor. ...to sufficiently incorporate by reference the link, assuming you could have gotten there. So... I'm sorry, Judge. Two things, very quickly, with the permission of the Court. First, the district court below engaged in an exercise of comparative law pursuant to the strictures of what the Supreme Court of Puerto Rico has found and basically advised courts to do when there is no Puerto Rico case law on the point. This issue of incorporating by reference provisions found on websites, I mean, there's basically no Puerto Rico case law. So what did the district court do? The district court went to federal persuasive case law. It looked at the free circuit West District of New York, Northern District of Ohio, Eastern District of Missouri, Western District of Pennsylvania, Eastern District of Michigan, and it basically found in light of the persuasive authority, it looked at across the federal courts that this specific provision entitled by the Wayne Warranty, in bold, not entitled anything else but Warranty, did not clearly communicate to Holson that it was going to be bound by an authority free-shifting provision. So I think in that sense one can conclude that the district court below did not abuse its discretion in it. A minor question. Back to your footnote 5. Yes, sir. The typed version of that address in your footnote 5 that you say does not work includes a typographical error. You see where it says peerless with an extra W in the word? Yes. I've got to ask, is that the source of the problem? Because that's not the address that was actually in the footnote. I acknowledge and appreciate your observation, Your Honor, but that's not the source of the problem because recently we engaged in the same exercise and there was no spanning mistake when we were typing in the computer. To the best of my knowledge, no, that's not the source of the problem. I want to make sure I understand where we're located in this. If I'm understanding you now, in addition to the contractor adhesion argument and the incorporation argument, you advance two other arguments for why the contract could not be enforced. One was that if you went to the link you got nowhere. Correct? Well, that's not an adhesion argument. That's basically part of the non-incorporation argument. That's a distinct argument because that would be a problem even if we thought the terms and conditions suffice to be incorporation. The second argument that you mentioned you made in the arguments below was that the contract is unenforceable as a matter of Puerto Rico policy because of its Conflict Rule 44.1.1. Is that right? Yes, no, the district court and I have to go see the district court did not embrace Yes, but it also didn't reject it, correct? Yes. Because it never reached it. The reason why I ask is just for purposes of what would follow even if we agreed with your opponents is that there would be outstanding arguments that were raised below for the non-enforcement of the contract that would still have to be addressed on remand to follow. Or have you abandoned those arguments? No, no, it could be the case specifically in Puerto Rico, no. And those have not been addressed at all. That's helpful. If we get to the merits of the question of whether the incorporation ruling was correct I want to understand the argument that you're making. The fact that the provision appears in the warranty heading seems to me it's unclear why that matters for purposes of incorporation if in fact that line is a term and condition, not a warranty which it self-evidently is and separately you're told here's the terms and conditions and warranty why would that statement, here are the terms and conditions in the context in which that statement was made be sufficient to incorporate the terms and conditions, in other words anything that is a term and condition into the contract or is the idea that even if that is sufficient it's because this particular term and condition appears under the warranty heading that it wasn't incorporated what is the argument that you're making? The argument, Your Honor, is quite simple and it has to do with explicit specific language found under the warranty section where it says for a complete list of our terms and conditions and warranty details visit this address. In other words it would be reasonable to conclude that this refers exclusively to terms and conditions pertaining to warranty Why? Because of the language how is the language, the way in which it's structured here under a big bold heading entitled warranty. That's the reason why the district court below found that this language did not clearly communicate to Holsum that it was going to be bound by this. What is the function of the words terms and conditions? if warranty details would cover everything Well, Your Honor, if the language had been different terms and conditions and that's it no reference to warranty I'm asking the opposite question if it says terms and conditions and warranty detail what is the function on your view of the words terms and conditions that's not totally superfluous of warranty details well the language I'm trying to understand your question well if it said warranty then that would just be the warranty if it said warranty details it would say details about the warranty if you have warranty details plus terms and conditions why would one think it's terms and conditions of the warranty why would you think it's warranty details and terms and conditions well I'm just trying to understand the idea that you could reasonably think that they were warranty terms and conditions plus warranty details you see what I'm getting at yes, yes I clearly understand the significance of your question but I would like to raise the following context in order to maybe put this question into perspective these are two commercial partners who have been dealing in business since the early 80s and also have been buying merchandise and machines from Peerless for close to 40 years and in looking at this after all this history of business amongst these partners I mean the impression of my client is this has something to do with warranty something, a free-shifting provision that hadn't come up in close to 40 years of business history between these partners I have no further explanation other than to basically try to put this in context and again you know the comparative law analysis in which the district court below engaged and the way in which it resumed and it parcelled out the various arguments are you saying that if a dispute arose between these one standing parties that involved a warranty you wouldn't be here making the same argument that it wasn't sufficiently incorporated by revenue not necessarily your honor and if one looks at the opinion below I think that Judge Woodcock makes a rather subtle distinction between what would happen if this were just a warranty issue as opposed to a free-shifting provision that might end up that would seem to only make sense if the problem was where this particular term and condition was located in the linked document not whether the things in that document were incorporated into the contract one could argue that could one argue the opposite that's another way to argue for us and the significance of that then is well is the is this really a failure to incorporate case or is this really it was an incorporation and then was it clear what was incorporated that's an interesting nuance from our perspective there was no incorporation no incorporation was perfected the district court seemed to agree but I think even if it's a warranty then it wouldn't have been incorporated nothing would have been incorporated if it all wasn't incorporated they agree with you your honor unless the argument is terms and conditions and warranty details meant only the warranty was incorporated and then I guess I just am having trouble understanding why that would be a reasonable interpretation of that fact when you go to a document you find things beyond the warranty I think the district court tackled these issues correctly your honor I think the district court acted reasonably I think there was no clear mistake of law here I mean it's an abuse of discretion standard review and it is our position that even if one might disagree with the court below it seems as if the court below did not abuse its discretion there wasn't any material error of fact here it could be an error of law if either the contract incorporates it or it doesn't that's not an abuse of discretion that's an interpretation of a contract or at least if you get that legal question wrong it's automatically an abuse of discretion well in this case the district court's opinion below should be affirmed nothing further thank you thank you counsel at this time counsel for the appellant can please introduce himself back on the record to begin he has a two minute rebuttal thank you very much Carlos Rodriguez on behalf of the appellant after 40 years of business relationships this was a curious way to treat a business partner in fact it was a business partner and Polson did not prevail in its claims against fearless under either theory of breach of contract or negligence but I wanted to point out to the court that it was Polson who submitted the entire terms and conditions that were contained in the hyperlink to the district court and it was Polson who submitted as part of an exhibit to its sir reply so it was aware it did reach those terms and conditions as late as 2022 so those terms were there now I would like to address you I would also like to direct you to footnote four yes in your request for fees you didn't cite to the contract in the link yes we did we cited to the precise section of the fee shifting provision we didn't submit the entire terms conditions and warranty that were contained in the hyperlink Polson did that even though they're saying that they had never been able to reach it I'm just rebutting that particular issue since you don't have that much time the fundamental question of contract interpretation about incorporation on your understanding of what the district court is saying and what's an issue where is the ambiguity and where do you see there being no ambiguity could you just help me with that because we've got a phrase that says terms and conditions and warranty details is your proposition that that communicated that the warranty was incorporated correct? yes and do you understand the district court to dispute that no so it accepts that the warranty was incorporated that's where I was going your honor but now second is the point of ambiguity that the district court does then fixate on on your understanding that terms and conditions may have itself been a reference merely to the warranty that was the district court's interpretation by my reading that it was only referring to warranty I do not understand that I think it was clear that it was terms and conditions and warranty and once you read it together with the first invoice submitted by then there should be no misunderstanding and the only point that I wanted to make before I leave was to just give you the reference in the appendices the joint appendix at 528 529 the footnote for the addendum at 18 the court itself referred to what also submitted and didn't submit and in addition I wanted to point out that the terms conditions and warranties the seven page document is at 538 through 545 of the joint appendix those are the terms and conditions that Polson itself submitted to the court after having found them in the hyperlink thank you thank you counsel that concludes argument in this case